2009 OK 49

**Lora Ann MILLER, Plaintiff/Appellant,**

v.

**DAVID GRACE, INC., David Grace, individually, and First Choice Management, Defendants/Appellees,**

and

**Satca, Ltd., Parent Company of River Chase Apartments, and First Choice Properties, Inc., Defendants.**

No. 104,313.

Supreme Court of Oklahoma.

June 30, 2009.

---

44. Art. 2 § 19 and Art. 2 § 7, Okla. Const., *supra* note 15.

Rex Travis, Paul D. Kouri, Oklahoma City, for Plaintiff.

C. William Threlkeld, C. Todd Ward, Brion B. Hitt, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for Defendant/Appellee First Choice Management.

Victor F. Albert, Conner & Winters, LLP, Oklahoma City, for Defendants/Appellees David Grace and David Grace, Inc.

COLBERT, J.

¶ 1 On December 29, 2008, this case was assigned to this office. This is a negligent maintenance and construction action initiated by a tenant against her landlord and a contractor after the tenant fell from her second story balcony due to a defectively installed balcony railing. The district court granted the landlord's and contractor's motions for summary judgment based on the traditional common law rule that holds a landlord harmless for injuries occurring on the leased premises and held that the danger was open and obvious. The appellate court affirmed the judgment in favor of the landlord but reversed the judgment in favor of the contractor because factual questions remain as to the tenant's knowledge of the dangerous condition and whether the danger was open and obvious. We hold that summary judgement was inappropriate as to both defendants and adopt the view embraced by other jurisdictions which imposes a general duty of care upon landlords to maintain the leased premises in a reasonably safe condition, including areas under the tenant's exclusive control or use.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶2 On July 29, 2002, Plaintiff, Lora Ann Miller (Tenant) moved into the River Chase Apartments owned and operated by First Choice Management (Landlord).[1] The unit was located on the second floor and contained a wooden balcony deck and U-shaped metal guardrail. At Landlord's request, Tenant was instructed to inspect the unit to determine if "anything was wrong with [the unit]" and convey her findings to Landlord. During Tenant's inspection, Tenant discovered the balcony railing was loose.

¶3 Tenant testified by deposition that she believed her balcony was dangerous and "maybe somebody was going to fall." According to Tenant, the balcony railing was loose because it was missing a screw and the railing was not "metaled" to the wall. Tenant advised the apartment manager of the defects on at least two occasions. Allegedly, the manager advised Tenant that "she would help [Tenant] take care of it"; however, no repairs were ever made. Unbeknownst to Tenant, the railing was also missing additional screws on the other side of the balcony and the balcony flooring was cracked in the very spot where the railing should have been attached by screws to the wooden deck.

¶4 On August 18, 2002, Tenant, while standing on the balcony, placed her hand on the defective railing, leaned forward, and the entire U-shaped railing along with Tenant fell from the second floor, landing on the ground below. She sustained multiple injuries.

¶5 In September 2001, just eleven months prior to Tenant's fall, Landlord employed David Grace, Inc. (Contractor) to "rebuild all balconies as per city code." According to Contractor, Landlord did not notify Contractor of any problems with the repair work.

¶6 Tenant initiated a negligent maintenance and construction action against Landlord and Contractor, respectively. Tenant asserts that Landlord owed her a duty to repair the defective railing. In addition, she contends the dangerous condition was not an open and obvious hazard and therefore, she was unable to fully appreciate the risk. As to Contractor, Tenant contends that Contractor "owed a duty to construct and install a safe balcony railing."

¶7 In separate motions, Landlord and Contractor moved for summary judgment asserting no duty was owed in view of the holdings in *Godbey v. Barton,* 1939 OK 19, 86 P.2d 621, and other similar cases; and that the balcony railing was an open and obvious condition. To support their respective arguments, each attached Tenant's deposition testimony admitting that Tenant discovered the loose railing and missing screw at the commencement of her lease. In addition to Landlord's no duty defense, Landlord maintains that Tenant had exclusive control of the premises.

¶8 In response, Tenant reasserted Landlord's failure to repair the defective railing. As to Contractor, Tenant maintained Contractor's duty to install a safe railing and in support, Tenant submitted the September 2001 River Chase–David Grace, Inc. contract to "rebuild all balconies as per city code," and evidence of the balcony area illustrating the existence of "additional defects" such as corrosion and rust in the railing joints and welds, of which she had no knowledge.

¶9 Without explanation, the trial court granted summary judgment to both defendants. Tenant appealed. The appellate court affirmed judgment in favor of Landlord,[2] but reversed the judgment in favor of Contractor because Tenant's negligence action stems from an improperly installed railing, not from Contractor's alleged duty to warn her of the defective condition. Tenant urges this Court to overrule *Godbey,Alfe v. New York Life Ins. Co.,* 1937 OK 243, 67 P.2d

---

1. Satca, Ltd. is the parent company of River Chase Apartments, FCM, and First Choice Properties, Incorporated.

2. Although Landlord asserted two bases for summary judgment, Tenant addressed only one—that the Court of Civil Appeals "overrule *Godbey v. Barton,* 1939 OK 19, 86 P.2d 621 ... and similar cases expressing the rule of landlord tort immunity." That court viewed Tenant's request to be beyond its purview, and because Tenant failed to challenge Landlord's second defense—the open and obviousness of the danger—summary adjudication in favor of Landlord was affirmed.

947, and similar cases; and to adopt the view embraced by a majority of other states which removes a veil of landlord immunity and instead treats the landlord as any other property owner imposed with a general duty of care of their premises.

## II. STANDARD OF REVIEW

¶ 10 A moving party is entitled to summary judgment as a matter of law only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that no genuine issue of material fact exists. *Davis v. Leitner,* 1989 OK 146, ¶ 9, 782 P.2d 924, 926. In reviewing the grant or denial of summary judgment, this Court views all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the nonmoving party. *Id.* Because a grant of summary judgment is purely a legal issue, this Court's standard of review on appeal is de novo. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

¶ 11 In order to defeat a summary judgment motion on a negligence claim, the opponent must establish that a genuine issue of material fact exists as to whether the defendants: (1) owed a duty of care to the plaintiff; (2) breached that duty; or (3) breach of that duty proximately caused the plaintiff's injuries. *See Copeland v. Tela Corp.,* 1999 OK 81, ¶ 5, 996 P.2d 931, 933. The cornerstone of a negligence action is the existence of a duty. *Bray v. St. John Health Sys., Inc.,* 2008 OK 51, ¶ 6, 187 P.3d 721, 723. The issue of whether a duty existed is a question of law. *Id.*

## III. ANALYSIS

¶ 12 Tenant urges that the Oklahoma Legislature abrogated the common law landlord tort immunity rule with its enactment of Okla. Stat. tit. 41, § 118 (2001). She contends the immunity rule articulated in *Alfe* and *Godbey* is out of sync with Oklahoma's landlord tenant laws. Those cases centered around Okla. Stat. tit. 41, §§ 31 and 32, which was repealed by section 118 in 1978.

¶ 13 This Court, however, cannot agree with Tenant's contention. Absent the Legislature's expressed intent to the contrary, the common law remains intact. *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, ¶ 11, 833 P.2d 1218, 1225. Although the Oklahoma Landlord Tenant Act, specifically Okla. Stat. tit. 41 § 118(A)(2) (2001)[3], imposes a duty upon the landlord to "[m]ake all repairs and do whatever is necessary to put and keep the tenant's dwelling unit and premises in a fit and habitable condition," it does not create a tort remedy for personal injuries sustained as a result of a landlord's breach of those duties. It merely regulates the contractual rights and obligations of the residential parties and does not enlarge the landlord's duty under common law. *See* Okla. Stat. tit. 41, §§ 103(A) & 121 (2001).

¶ 14 Landlord and Contractor insist no duty is owed to Tenant in light of the holdings articulated in *Godbey,* 1939 OK 19, 86 P.2d 621, and *Alfe,* 1937 OK 243, 67 P.2d 947. In *Godbey,* the tenant-plaintiff sued the landlord-defendant for the drowning death of tenant-plaintiff's infant son. The infant fell into an open cistern located on the leased premis-

---

**3.** Okla. Stat. tit. 41, § 118 states:
A. A landlord shall at all times during the tenancy:
1. Except in the case of a single-family residence, keep all common areas of his building, grounds, facilities and appurtenances in a clean, safe and sanitary condition;
2. Make all repairs and do whatever is necessary to put and keep the tenant's dwelling unit and premises in a fit and habitable condition;
3. Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances, including elevators, supplied or required to be supplied by him;
4. Except in the case of one- or two-family residences or where provided by a governmental entity, provide and maintain appropriate receptacles and conveniences for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for the frequent removal of such wastes; and
5. Except in the case of a single-family residence or where the service is supplied by direct and independently metered utility connections to the dwelling unit, supply running water and reasonable amounts of hot water at all times and reasonable heat.
B. The landlord and tenant of a dwelling unit may agree by a conspicuous writing independent of the rental agreement that the tenant is to perform specified repairs, maintenance tasks, alterations or remodeling.

es. Prior to the accident, the tenant-plaintiff discovered the open cistern which was concealed by tall weeds. The doctrine of caveat emptor controlled because no lessor-lessee covenant to repair existed, the tenant-plaintiff was in exclusive control of the demised premises, and the tenant-plaintiff was aware of the condition's existence long before the fatal accident. 1939 OK 19, 86 P.2d 621.

¶ 15 *Alfe* presents a landlord's failure to adhere to the statutorily prescribed obligations to lease a premises in a fit and habitable condition. In *Alfe*, the landlord leased residential property to a tenant in a demised unhabitable condition. Subsequently, the tenant was injured as a result of the hazardous and dangerous condition. That court however, held the only liability imposed upon a landlord is derived by statute and any remedies for breach of those duties are confined exclusively to those enumerated therein. 1937 OK 243, 67 P.2d 947.

¶ 16 In the area of landlord tort liability, Oklahoma currently follows the common law maxim of "caveat emptor," which states:

the right of possession and enjoyment of the leased premises passes to the lessee, in the absence of concealment or fraud by the landlord as to some defect in the premises known to him and unknown to the tenant, the rule of caveat emptor applies and the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein.

*Godbey*, 1939 OK 19, ¶ 5, 86 P.2d 621, 622 (quoting 110 A.L.R. 756 (1937)).

¶ 17 Over the years, Oklahoma has carved out several exceptions to this rule. For instance, in *Buck v. Miller*, 1947 OK 172, 181 P.2d 264, this Court imposed liability on a landlord where the landlord negligently made repairs or improvements. *See also Crane Co. v. Sears*, 1934 OK 375, ¶ 28, 35 P.2d 916, 920. Next, this Court attached liability to a landlord who failed to maintain common areas under the landlord's control. In *Arnold v. Walters*, the court noted that:

Where the owner of an apartment house leases parts thereof to different tenants and expressly or impliedly reserves other parts thereof, such as entrances, halls, stairways, porches, walks, etc., for the common use of different tenants it is the owners duty to exercise reasonable care to keep safe such parts of which he so reserves control, and if he is negligent in this regard and a personal injury results by reason thereof to a tenant, he is liable, provided the injury occurs while such part of the premises is being used in the manner intended.

1950 OK 198, ¶ 0, 224 P.2d 261.

¶ 18 And most recently, this Court's jurisprudence pierced the "landlord immunity veil" again finding a landlord liable when the landlord's acts or omissions enabled a third party to commit criminal acts upon a tenant in *Lay v. Dworman*, 1986 OK 85, 732 P.2d 455. *In Lay*, the plaintiff was assaulted and raped after an intruder gained access to her apartment due to a defective lock on a sliding glass door. Although the tenant previously complained of the defective lock on the sliding glass door, the landlord failed to make the necessary repairs. The *Lay* court imposed a duty upon the landlord "to use reasonable care to maintain the common areas of the premises in such a manner as to insure that the likelihood of criminal activity is not unreasonably enhanced by the condition of those common premises." *Id.* ¶ 9, 732 P.2d at 458. In so doing, the *Lay* court noted that "the landlord faces potential liability when the circumstances are such that a reasonable man would realize that a failure to act would render one relying on those actions susceptible to criminal acts." *Id.* ¶ 11, 732 P.2d at 459. Therefore, any tenant injured as a result of a landlord's failure to act has no redress currently unless that tenant can successfully frame a cause of action to fit into one of this Court's recognized exceptions. The end result discourages repairs and rewards inattentive landlords with immunity from suit while impeding a tenant's recovery for a landlord's utter disregard for a tenant's health, safety, and welfare.

¶ 19 At present, Oklahoma's adherence to the caveat emptor doctrine obscures rather than illuminates the proper considerations which govern a court's determination of a residential landlord's duty. Instead, reason-

ableness and foresight should be paramount. No tenant's life or limb is less worthy of Oklahoma's protection simply because the tenant is in possession of the landlord's premises. It is unreasonable to allow a landlord to seek refuge under the cloak of immunity after intentionally turning a deaf ear to a tenant's pleas to make necessary repairs.

¶ 20 Other jurisdictions have overruled the caveat emptor doctrine as it relates to residential tenancies.[4] In *Young v. Garwacki*, 380 Mass. 162, 402 N.E.2d 1045, the Supreme Judicial Court of Massachusetts found a landlord liable for a third-party's personal injuries sustained in a fall from a tenant's second-story front porch due to a defective railing. In that case, the tenant leased a second story unit as a tenant at will. The unit contained a porch that was only accessible from the tenant's living room, which was not under the landlord's control. One evening, the tenant hosted a dinner party. The tenant's guest approached the porch railing and leaned forward causing the railing to give way. The guest fell two stories and was injured.

¶ 21 Before the accident, the landlord's insurance company advised the landlord that the unit's railing was dangerous and cancelled the landlord's liability insurance. The landlord however, failed to make the necessary repairs but purchased the repair materials and warned the tenant of the danger. Although the landlord made no express agreement to keep the premises in repair, the landlord testified that he considered it his obligation to do so.

¶ 22 Prior to the *Young* decision, the prevailing rule in Massachusetts made the landlord immune from suit for defects that existed on the property at the time of the lease, unless the landlord failed to warn of the hidden defects. *Id.* at 1047. Absent an express agreement and consideration, a landlord had no duty to keep the premises in a safe condition. Any repairs the landlord made subsequent to the lease, were merely

---

4. Idaho—*Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41, 50 (1984) ("adopt[ing] the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances" and stating that "[t]hose questions of hidden danger, public use, control, and duty to repair, which under the common-law were prerequisites to the consideration of the landlord's negligence, will now be relevant only inasmuch as they pertain to the elements of negligence, such as foreseeability and unreasonableness of the risk"); Nebraska—*Tighe v. Cedar Lawn, Inc.*, 11 Neb.App. 250, 649 N.W.2d 520, 529 (2002) ("[*Heins*] abrogated the distinction between invitees and licensees and held that owners and occupiers of land owe a general duty of reasonable care to all lawful entrants. The *Heins* ruling was prospective, however, applying only to actions arising after the August 23, 1996, ruling, whereas [the plaintiff's] accident [falling into a well hole on the leased premises] occurred on July 9, 1996. We do not consider how *Heins* might affect this case." (citing *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996))); Nevada—*Turpel v. Sayles*, 101 Nev. 35, 692 P.2d 1290, 1292–93 (1985) (quoting Massachusetts, New Hampshire, and Wisconsin courts in deciding to abandon the common law rule of caveat lessee); New Hampshire—*Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528, 534 (1973) ("[W]e today discard the rule of 'caveat lessee' and the doctrine of landlord nonliability in tort to which it gave birth.... Henceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm."); New Jersey—*Anderson v. Sammy Redd and Associates*, 278 N.J.Super. 50, 650 A.2d 376, 379 (1994), cert. denied, 139 N.J. 441, 655 A.2d 444 (1995) ("Like any other individual, a landlord may be adjudged negligent if, under all the circumstances, he failed to act as a reasonably prudent person, and such failure was a proximate cause of the alleged injury."); New Mexico—*Gourdi v. Berkelo*, 122 N.M. 675, 930 P.2d 812, 814–16 (1996) (stating that "a landlord is bound by the standard of ordinary care, and must, prior to leasing the premises, remedy such dangerous conditions as an inspection conducted with ordinary care would reveal" and that "[a] tenant is entitled to exclusive occupancy [of leased premises] during the term of the tenancy, and it is [the tenant's] duty, if the premises get out of repair, to notify the landlord of their defective condition") (citations omitted); Utah—*Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985) ("[T]his court has charged landlords with a duty to exercise reasonable care toward their tenants in all circumstances."); Vermont—*Favreau v. Miller*, 156 Vt. 222, 591 A.2d 68, 72 (1991) (citing *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528, 534 (1973)) ("hold[ing] that Vermont landlords too may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain "control" of the dangerous condition"); Wisconsin—*Pagelsdorf v. Safeco Ins. Co. of Am.*, 91 Wis.2d 734, 284 N.W.2d 55, 56 (1979) ("Abrogating the landlord's general cloak of immunity at common law, we hold that a landlord must exercise ordinary care toward his tenant and others on the premises with permission.").

gratuitous and tort liability could only attach if the repairs were made in a grossly negligent fashion. *Id.*

¶ 23 Recognizing the archaic nature of this common law rule, the Massachusetts court did an about-face and adopted a rule that required a "landlord [to] act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." *Id.* at 1049, quoting *Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528, 534 (1973).

## IV.

¶ 24 The evolving nature of residential leases demand the reformation of an archaic rule, and today this Court supplants the caveat emptor doctrine of landlord tort immunity. In its place, this Court imposes a general duty of care upon landlords to maintain the leased premises, including areas under the tenant's exclusive control or use, in a reasonably safe condition. This duty requires a landlord to act reasonably when the landlord knew or reasonably should have known of the defective condition and had a reasonable opportunity to make repairs.

¶ 25 It is clear from the totality of the record that Landlord knew or should have known that the balcony railing was unsafe. Tenant testified she reported the loose railing to the "lady in the office" and neither Landlord nor Contractor disputed this fact. However, Landlord remained complacent and failed to make the necessary repairs or at a minimum, investigate Tenant's concerns. Upon Tenant's notice to Landlord of the dangerous condition, Landlord had a duty to exercise reasonable care to restore Tenant's balcony to a safe condition. To the extent

that *Godbey, Alfe,* and other similar cases are inconsistent with this Court's finding that a landlord owes a general duty of care to the tenant, those cases are overruled.

¶ 26 This Court recognizes that the safety of tenants is furthered by properly installing guardrails and ensuring other protective devices are in sufficient working order. The expectation that a landlord act reasonably is inherent in contemporary residential leases. One of those legitimate expectations includes proper installation and maintenance of a balcony guardrail, especially when its predominate function is to prevent a person from falling.

¶ 27 Moreover, the underlying safety considerations articulated in *Lay,* are present here. Safety features such as "doors and window locks, . . . alarm devices . . . [and as in the instant case, balcony railings], directly relate to security." *Lay,* 1986 OK 85, ¶ 11, 732 P.2d 455, 459. Leasing a premises that is "inadequately secured due to ineffective or defective materials . . . [creates] a duty on the part of the landlord to provide repairs or modifications . . . upon notification of the defect by the tenant. This duty arises from the landlord-tenant contract and from the implication that the landlord is to provide services under the contract in a diligent manner." *Id.* ¶ 10, 732 P.2d at 458.

¶ 28 The landlord's knowledge is key in triggering the duty to maintain the leased premises in a reasonably safe condition. Although, the landlord's right to reenter areas of the leased premises under the tenant's exclusive control are limited to the tenant's consent, cases of emergency, abandonment, or court injunctive relief, Okla. Stat. tit. 41 § 128(D)[5], today's pronounce-

---

5. Okla. Stat. tit. 41, § 128, Consent of Tenant for Landlord to Enter Dwelling Unit—Emergency Entry—Abuse of Right of Entry—Notice—Abandoned Premises—Refusal of Consent, states:

A. A tenant shall not unreasonably withhold consent to the landlord, his agents and employees, to enter into the dwelling unit in order to inspect the premises, make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.

B. A landlord, his agents and employees may enter the dwelling unit without consent of the tenant in case of emergency.

C. A landlord shall not abuse the right of access or use it to harass the tenant. Except in case of emergency or unless it is impracticable to do so, the landlord shall give the tenant at least one (1) day's notice of his intent to enter and may enter only at reasonable times.

D. Unless the tenant has abandoned or surrendered the premises, a landlord has no other right

ment does not make the landlord an insurer of the tenant's safety. Rather, this Court imposes a duty upon the landlord to act reasonably when the landlord knew or by the exercise of reasonable diligence would have known, of the defective condition, *See Schlender v. Andy Jansen Co.,* 1962 OK 156, ¶ 18, 380 P.2d 523, 527, and had a reasonable opportunity to make repairs. Only in the presence of a duty neglected or violated will a landlord's negligence be actionable. By the same token, the landlord's liability, as any other tortfeasor, may be reduced or absolved by the tenant's contributory negligence. The question of liability should be submitted to the jury to decide.

## V.

¶ 29 The law is well-settled that a landowner has a duty to keep the premises in a reasonably safe condition, *Jack Healey Linen Ser. Co. v. Travis,* 1967 OK 213, ¶ 5, 434 P.2d 924, 926–27, and to warn others of any "hidden dangers, traps, snares, pitfalls, and the like." *Id.* ¶ 5, 434 P.2d at 926–27 (citing *Henryetta Constr. Co. v. Harris,* 1965 OK 88, ¶ 3, 408 P.2d 522, 531–32 (Irwin, J., supplemental opinion on rehearing)). Excepted from this duty is the necessity of protecting from dangers so "open and obvious" as to reasonably expect others to detect them for themselves. *Id.* ¶ 5, 434 P.2d at 926–27 (citing *Henryetta Constr. Co. v. Harris,* 1965 OK 88, ¶ 7, 408 P.2d 522, 531–32 (Irwin, J., supplemental opinion on rehearing)).

¶ 30 In the instant case, the lower court failed to consider evidence that there were dangerous latent defects in the guard-rail. The Tenant provided evidence that the "balcony flooring was cracked in the very spot where the railing should have been attached on the bottom …," the railing joints and welds were rusted and corroded, and several screws were missing-all of which were unknown to Tenant. From the evidence, a reasonable inference may be drawn that the railing was not attached but merely propped against the building wall. These latent defects present material issues of fact which preclude summary judgment. Additionally, these facts are relevant to whether the dangerous condition was open and obvious and whether such danger and risk was imperceptible to Tenant.

¶ 31 Despite Tenant's familiarity with the general physical condition of the railing, such familiarity cannot transform a defective condition into an apparent appreciable risk.[6] *Jack Healey,* 1967 OK 213, ¶ 9, 434 P.2d 924, 927. Likewise, it does not follow that unknown hidden defects are open and obvious. The openness and obviousness of the dangerous condition and whether Tenant appreciated those risk are questions for the jury. The trial court erred in removing these issues from the jury's consideration. *Rogers v. Hennessee,* 1979 OK 138, 602 P.2d 1033; *Jack Healey,* 1967 OK 213, 434 P.2d 924.

¶ 32 Moreover, this Court agrees with the Court of Civil Appeals conclusion that Contractor's sole reliance on the "no duty defense" is misplaced. Like Landlord, Contractor focused primarily on Tenant's deposition testimony that Tenant knew the railing was loose. Based on Tenant's testimony, Contractor asserts the defective railing was

---

of access during a tenancy except as is provided in this act or pursuant to a court order.
E. If the tenant refuses to allow lawful access, the landlord may obtain injunctive relief to compel access or he may terminate the rental agreement.

6. As the *Jack Healey* court noted:
Plaintiff's familiarity with the general physical condition which may be responsible for her injury does not of itself operate to transform the offending defect into an apparent and obvious hazard. Mere knowledge of the danger without full appreciation of the risk involved is not sufficient to bar plaintiff's right of recovery. … While

the general physical condition might be familiar to the actor, a particular risk from the known defect could nevertheless, under the circumstances of a given occasion, be incapable of appreciation. If, as here, conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a 'deceptively innocent appearance', or its extent could not be anticipated, neither the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law. The question is one for the jury. …
1967 OK 213, ¶ 9, 434 P.2d 924, 927–28.

open and obvious; and therefore no duty is owed to Tenant. Contractor's argument however, misperceives premises liability and the defenses contained therein. Tenant's cause of action against Contractor stems from Contractor's failure to construct and install a safe balcony railing, not Contractor's failure to warn of a hazardous condition in the premises liability context. *See Schlender v. Andy Jansen Co.,* 1962 OK 156, 380 P.2d 523 (a contractor may be liable to a third-party for negligent construction where the contractor wilfully created a condition which by the exercise of ordinary diligence contractor would have known of the condition's existence). The record does not demonstrate Contractor's entitlement to a "no duty" defense based on an open and obvious danger.

## VI. CONCLUSION

¶ 33 Today this Court recognizes a landlord's duty to exercise reasonable care. We express no opinion on whether Tenant may be able to ultimately recover against either Landlord or Contractor for negligence. However, because the existence of disputed material facts remain as to (1) whether the Landlord's duty of care was breached; and (2) the open and obvious character of the balcony railing so as to relieve Landlord and Contractor of liability, the orders granting summary judgment are reversed.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; AND MATTER REMANDED FOR FURTHER PROCEEDINGS.

CONCUR: EDMONDSON, C.J.; KAUGER, WATT, COLBERT, REIF, JJ.

DISSENT: TAYLOR, V.C.J.; HARGRAVE, OPALA, WINCHESTER, JJ.

HARGRAVE, J., with whom TAYLOR, V.C.J., OPALA, WINCHESTER, JJ. join, dissenting. I would deny certiorari.