2015 OK CIV APP 35

**VANGUARD BUILDERS, INC.,**
**an Oklahoma corporation,**
**Plaintiff/Appellant,**

v.

**GRANITE RE, INC., Defendant/Appellee,**

and

**L. Wallace Construction Company, Inc., an Oklahoma corporation; Trilogy Development Group, Inc., an Oklahoma corporation; Larry Wallace, an individual; L. Adam Wallace, an individual; and John Does 1 through 5, Defendants.**

No. 112,507.

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 25, 2014.

Certiorari Denied March 30, 2015.

Steven K. Metcalf, William H. Spitler, McDonald, McCann, Metcalf & Carwile, L.L.P., Tulsa, Oklahoma, for Plaintiff/Appellant.

Evan B. Gatewood, Hayes Magrini & Gatewood, Oklahoma City, Oklahoma, for Defendant/Appellee.

P. THOMAS THORNBRUGH, Judge.

¶ 1 Vanguard Builders, Inc. (Vanguard), appeals a summary judgment in favor of Granite Re, Inc. (Granite), decided on the grounds that Vanguard did not file suit within the applicable limitations period to recover on a statutory bond made pursuant to 61 O.S.2011 §§ 1 and 2. We vacate the summary judgment for the reasons set forth below, and remand for further proceedings.

## BACKGROUND

¶ 2 This appeal comes to us pursuant to 12 O.S.2011 § 994, from a summary judgment made early in the underlying case. As a result, many of the facts which are recited for background are disputed. *For the purposes of this opinion, we recite the disputed facts as alleged by Vanguard without commenting on any final disposition of these facts.*

¶ 3 Vanguard is a metal building, roofing, and siding contractor. In February 2011, Vanguard entered into a contract with the L. Wallace Construction Company, Inc., and Trilogy Development Group, Inc. (LWCC/Trilogy),[1] to perform part of the construction of a gymnasium at Wilson Public Schools (School) in Wilson, Oklahoma. Trilogy was the main contractor, and Vanguard was a subcontractor. Pursuant to 61 O.S. 2011 §§ 1 and 2 (Bonding Statute), Trilogy obtained the required statutory bond (Bond) from Granite as surety, to cover any payments due to subcontractors if the main contractor defaulted. Trilogy paid Vanguard regular progress payments, but withheld a 10% "retainage." The total of the withheld payments was $37,600.

¶ 4 Vanguard completed its portion of the work on January 20, 2012, and invoiced LWCC for the remaining $37,600 as final payment. LWCC replied that it was not required to make a final payment to Vanguard until final payment by School, which was due only on "substantial completion" of the project. LWCC told Vanguard that School had not yet made this payment. Vanguard checked periodically with LWCC in the following months, but received a similar response.

¶ 5 On October 1, 2012, after LWCC had again asserted that School had not paid, Vanguard inquired of School concerning the delay in payment. School informed Vanguard that all sums due to Trilogy had been paid. Vanguard later learned that Trilogy had received a final payment from School some four months earlier, on May 31, 2012.

1. The exact relationship between Trilogy and LWCC is disputed. For the purposes of this opinion only, they are considered to be the same entity.

¶ 6 On October 3, 2012, Vanguard notified Granite that LWCC had defaulted, and demanded payment of the $37,600 as a final payment pursuant to the Bond. Granite contacted Trilogy regarding the default. Trilogy replied that it disputed the claim for return of the $37,600 retainage because Vanguard had "gone over its allotted time" during several phases of construction. Later, Trilogy apparently informed Granite that it did not have to pay Vanguard because Vanguard was liable for a "charge back" due to alleged damage to School's gymnasium floor.

¶ 7 Eleven weeks after notification, the dispute as to whether Trilogy was required to make the payment to Vanguard still had not been resolved. Vanguard states that, during this period, Granite represented that it would eventually pay, but that it could not do so until Trilogy determined the final amount owed to Vanguard. However, on February 4, 2013, one year and fifteen days after Vanguard last performed work at School, Granite denied the claim on the Bond.

¶ 8 On March 21, 2013, Vanguard filed suit against the Defendants. Vanguard's petition included a claim against Granite for payment of the $37,600, plus interest. On July 12, 2013, Granite filed a motion for summary judgment, alleging that Vanguard had failed to file suit to recover on the Bond within the one-year statute of limitation provided by the Bonding Statute. The district court granted Granite's motion. Vanguard appeals.

**STANDARD OF REVIEW**

¶ 9 "A moving party is entitled to summary judgment as a matter of law when the pleadings, affidavits, depositions, admission or other evidentiary materials establish that no genuine issue of material fact exists." *Smith v. City of Stillwater,* 2014 OK 42, ¶ 21, 328 P.3d 1192 (citing *Miller v. David Grace, Inc.,* 2009 OK 49, ¶ 10, 212 P.3d 1223; and *Davis v. Leitner,* 1989 OK 146, ¶ 9, 782 P.2d 924). "In reviewing the grant or denial of summary judgment, this Court views all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the nonmoving party." *Id.* "Because a grant of summary judgment is purely a legal issue,

this Court's standard of review on appeal is *de novo." Id.*

**ANALYSIS**

I. THE BONDING STATUTE

A. Statutory Text and Purpose

¶ 10 The statutory language in question is found in 61 O.S.2011 § 2(A), which states in relevant part:

> Any person to whom there is due any sum for labor, material or repair to machinery or equipment, furnished as stated in Section 1 of this title, the heirs or assigns of such person, may bring an action on the bond for the recovery of the indebtedness, provided that no action shall be brought on the bond after one (1) year from the day on which the last of the labor was performed or material or parts furnished for which the claim is made.

This language originates in R.L.1910, §§ 3881 and 3882.

At that time, § 3882 provided that:

> ... no action shall be brought on said bond after six months from the completion of said public improvements or public buildings.

In 1965, the Legislature amended the Bonding Statute, changing the limitations period from six months to one year. In 1968, the Legislature again amended the statute, changing the occurrence that triggered the running of the limitation period from the "completion of the building" to "the day on which the last of the labor was performed ... for which such claim is made." 1968 Okla. Sess. Laws. ch. 77 § 2.

¶ 11 In *Boren v. Thompson & Associates,* 2000 OK 3, ¶ 16, 999 P.2d 438, the Oklahoma Supreme Court identified two "fundamental objective[s]" of the Bonding Statute: the first is "protecting laborers and materialmen on public construction projects who have no lien rights against public land or improvements"; the second is "saving the public from all liability for liens for material and labor furnished on public improvements." *Id.*

### B. Vanguard's Arguments and the Statutory Text

¶ 12 Vanguard brings two arguments. The first is that the right to call on the Bond did not accrue until the amount due was finally decided, and the limitation period thus did not begin to run until the right to payment was determined. The second is that Vanguard's right to payment did not accrue until the project was "substantially complete," i.e., at the time payment was made by School on May 31, 2012; hence, Vanguard had one year from that date to file suit.

¶ 13 Both of these arguments appear to fail, since neither the date the payment was due, nor the date of substantial completion, trigger the running of the limitation period. Although an accrued right to payment is a prerequisite for suit pursuant to § 2 ("Any person to whom there *is* due any sum"), the limitation period of § 2 is not triggered by the accrual of a right to payment but by the expiration of the "day on which the last of the labor was performed or material or parts furnished for which the claim is made." The language of the statute, without further inquiry, *appears* to show a statute of repose. A statute of repose "restricts potential liability by limiting the time during which a cause of action can arise," and may bar a cause of action before it accrues. *Smith v. Westinghouse Elec. Corp.*, 1987 OK 3, n. 11, 732 P.2d 466.[2]

### C. Historical Supreme Court Interpretation of the Bonding Statute

¶ 14 Further inquiry regarding the period in which a claim against the Bond may be filed reveals that, in *Phillips Petroleum Co. v. U.S. Fidelity & Guaranty Co.*, 1968 OK 23, ¶ 15, 442 P.2d 303, the Oklahoma Supreme Court held:

[T]he limitation provision for bringing the action referred to in 61 O.S.1961, §§ 1 and 2, **is subject to waiver and estoppel** where the necessary facts are established as in other instances of the application of waiver and estoppel to a statute of limitation. (Emphasis added.)

*Phillips Petroleum* was decided in February 1968, and was based on the 1961 version of the Bonding Statute. The Legislature amended § 2 in 1965 to expand the limitation period to one year. Further, two months after *Phillips Petroleum* was decided, yet another version of the statute became effective, changing the triggering event from "completion of said public improvements or public buildings" to "the day on which the last of the labor was performed" as noted above.

¶ 15 In 1970, the Supreme Court again commented on the limitation period of § 2, in *Gasteam Radiator Co. v. U.S. Fidelity & Guaranty Co.*, 1970 OK 121, 471 P.2d 883, and appeared to reaffirm that a claim of immunity from recovery pursuant to the limitation period was subject to claims of waiver and estoppel. However, we note that, similarly, *Gasteam Radiator* did not interpret the current statutory language regarding the triggering occurrence.[3] Like *Phillips Petroleum*, it did not discuss the effects of the 1968 change from the limitation being triggered by "completion of said .... buildings" to "the day on which the last of the labor was performed" for which the claim is made. The Supreme Court has not cited *Gasteam* for this principle since that opinion was issued.

¶ 16 In 1987, the Supreme Court cited *Phillips Petroleum* in a footnote to *Whitley v. Oologah Independent School District No. I-4*, 1987 OK 67, n. 4, 741 P.2d 455 (Opala, J., concurring). It did so again in a footnote to *Trent By & Through Trent v. Board of*

---

**2.** Pursuant to the contract in this case, it appears possible that a right to payment *might not accrue until the limitation period on the bond has already passed;* i.e., by the time final payment was actually due, it could already be too late to call on the Bond. Such a result does not apparently comport with the public policy behind the Bonding Statute as stated in *Boren*, in that it clearly does not serve to "protect laborers and material-

men on public construction projects" who lack normal lien rights to protect their recovery.

**3.** *Gasteam* interpreted the 1965 statute, and revolved around the question of whether the 1965 extension of the limitation period from six months to one year applied to contracts that were in effect when the limitation period changed.

*County Commissioners,* 1988 OK 15, n. 9, 755 P.2d 615 (Opala, J., and Kauger, J., dissenting), and in a footnote to *Hart v. Bridges,* 1979 OK 31, n. 3, 591 P.2d 1172. These citations, however, appear to raise the general principle of estoppel being applied to a statute of limitations, rather than to a post–1968 affirmance of the *Phillips Petroleum* interpretation of the limitation period of § 2. Overall, we find the rule of *Phillips Petroleum* clear, but find no binding precedent indicating that its interpretation of § 2 applies to the current version of the Bonding Statute.

## II. IS *PHILLIPS PETROLEUM* STILL GOOD LAW?

 ¶ 17 It is a general principle of statutory construction that "[w]hen amending a statute the legislature is presumed familiar with the extant judicial construction then in force." *TXO Prod. Corp. v. Oklahoma Corp. Comm'n,* 1992 OK 39, ¶ 10, 829 P.2d 964. *See also Huff v. State,* 1988 OK 118, ¶ 4, 764 P.2d 183; *Lekan v. P & L Fire Protection Co.,* 1980 OK 56, ¶ 4, 609 P.2d 1289. Compared to the current statute, the 1961 statute construed in *Phillips Petroleum* had both a shortened limitation period (six months versus one year) and a different trigger for the running of the limitation period ("completion of said ... buildings" versus "the day on which the last of the labor was performed ... for which the claim is made.") We find, however, no structural difference between the 1961 statute and the current statute that would indicate any intent of the Legislature to undo the holding of *Phillips Petroleum.* Further, the Legislature has amended 61 O.S. § 2 three times since the *Phillips Petroleum* opinion was published. We find no indication that the Legislature, although aware of the rule of *Phillips Petroleum,* intended to overturn that rule by subsequent statutory amendments. We therefore hold that *Phillips Petroleum* is still good law, and its rule that "the limitation provision for bringing the action referred to in 61 O.S.[ ] §§ 1 and 2, is subject to waiver and estoppel where the necessary facts are established as in other instances of the application of waiver and estoppel to a statute of limitation" controls in this case.

## III. WAIVER AND ESTOPPEL

 ¶ 18 The factual record in this case is very limited, and many significant questions remain unanswered. Vanguard's right to payment or any amount due is not yet established, nor is LWCC's exact status as the main contractor. However, Vanguard alleged that it attempted to call on the Bond well within the limitation period; that it waited a substantial period before calling on the Bond because of misrepresentation by LWCC; that it relied on assurances by Granite that payment was merely delayed by questions as to the amount of a chargeback or a delay penalty; and that Trilogy and Granite delayed decision by eleven weeks before deciding, immediately after the limitation period expired, that Vanguard was owed no money. We note that the bonding contract required this decision be made "[w]ithin a reasonable period of time." [4] These disputed facts alone could support a waiver or estoppel argument.

¶ 19 We also return to the clear policy stated in *Boren* of "protecting laborers and materialmen on public construction projects who have no lien rights against public land or improvements." Modern construction contracts such as the contract in this case may inherently involve both long delays before "final payment," and complex disputes as to the final amount due. It is entirely possible that "final payment" may not be determined and due for *more* than a year after the last day of work. Allegedly, the main contractor in this case concealed the fact of payment by School, and failed to inform Vanguard that it disputed Vanguard's right to a final payment. It raised a defense to payment *only* when demand was made on the Bond. The bonding company then failed to admit or deny liability on the Bond for more than eleven weeks, until the statute of limitations had run.[5] If

---

4. Granite MSJ Exhibit B para 5.

5. We note that an apparent conflict of interest arises because it is the *bonding company that*

*investigates and determines when payment is due, and an extended investigation that may postpone*

these allegations are true, the stated purpose of the statute appears ill-served by denying recovery on the Bond.[6]

## CONCLUSION

¶ 20 We find the grant of summary judgment in favor of Granite on the basis of the statute of limitations was improvidently made at this time. We therefore vacate it, and remand this matter to the district court.

¶ 21 **VACATED AND REMANDED.**

RAPP, J., concurs, and FISCHER, P.J., dissents.

FISCHER, P.J., dissenting:

¶ 1 In my view, the amendments to 61 O.S. § 2 discussed by the Majority were made to conform the statute with other lien statutes. In my view, section 2 is still "an ordinary statute of limitation, not an extinguishment provision of the rights, liabilities and cause of action referred to in 61 O.S.1961 §§ 1 and 2." *Phillips Petroleum Co. v. U.S. Fid. & Guar. Co.*, 1968 OK 23, ¶ 0, 442 P.2d 303, 304 (Syllabus 1). Accepting as true Vanguard's argument that it was a direct subcontractor, it is undisputed that Vanguard did not file suit against Granite within the one-year limitation period required by section 2(A). Further, in its response to Granite's motion for summary judgment, Vanguard only asserted that its delay in filing this case resulted from its reliance on misleading statements by the contractor and its employee. Any suit on the bond not filed within the one-year limitation period is barred "unless the acts or conduct of the surety against whom the judgment is sought operates to estop such surety from pleading the limitation." *Id.* ¶ 0, 442 P.2d at 304 (Syllabus 2). No such "acts or conduct" of Granite are asserted by Vanguard. I

a decision until it is too late to collect on the bond *is thus in the bonding company's interest.*

**6.** The law *may* require that a subcontractor who has not been paid must both make demand on the bond, *and* sue the bonding company if the matter is not resolved when the statute of limitations approaches, even though the right to payment is not yet established, and the bonding

would affirm the judgment of the district court and, therefore, respectfully dissent.

company has not yet refused payment. However, requiring suit against the bond before payment is refused appears contrary to the evident purpose of the Bonding Statute to protect subcontractors and encourage participation in public projects by attempting to guarantee payment without the need for suit.