2015 OK 35

Vernon L. CROWNOVER,
Plaintiff/Appellant,

v.

Garland KEEL, County Treasurer of McIntosh County and Board of County Commissioners of McIntosh County, Defendants/Appellees.

No. 112,728.

Supreme Court of Oklahoma.

May 26, 2015.

Rehearing Denied Sept. 14, 2015.

 

Michael P. Brogan, Oklahoma City, Oklahoma, for Plaintiff/Appellant Vernon L. Crownover.

Carman D. Rainbolt, Checotah, Oklahoma, for Defendant/Appellee Garland Keel.

Gregory R. Stidham, Assistant District Attorney for McIntosh County, Eufaula, Oklahoma, for Defendants/Appellees County Treasurer of McIntosh County and Board of County Commissioners of McIntosh County.

COMBS, V.C.J.:

¶ 1 The question presented on appeal is whether an owner of real property received constitutionally sufficient notice of the sale of his property for delinquent taxes when notice was provided only by publication and certified mail that was returned undelivered. We hold that he did not.

## I.

## FACTS AND PROCEDURAL HISTORY

¶ 2 At issue in this cause is the ownership of certain real property in McIntosh County, Oklahoma. Plaintiff/Appellant Vernon L. Crownover (Crownover) originally obtained title to this property by virtue of warranty deed recorded in the McIntosh County Clerk's Office on May 18, 2001. The undisputed facts indicate Crownover ceased paying taxes on this property after paying the 2005 ad valorem taxes by check dated January 1, 2006.

¶ 3 After Crownover failed to pay taxes on the property for several years, the property was offered by McIntosh County for sale during the 2010 resale, pursuant to 68 O.S. 2011 §§ 3105 and 3125. It is undisputed that the notice provisions of 68 O.S.2011 § 3106, mandating notice by mail and publication, were complied with. Notice was sent by certified mail to Crownover at the address he provided when he purchased the property in McIntosh County, and was also published in a newspaper in McIntosh County. Unbeknownst to county treasurer's office, Crownover no longer lived at the address to which notice was sent.

¶ 4 Defendant/Appellee Garland Keel (Keel) purchased the property at the 2010

tax resale and received a resale tax deed. Keel contacted Crownover after obtaining the resale tax deed to inquire about a boat and trailer Crownover had left on the property. Apparently only at this point did Crownover become aware that the property had been sold at the tax resale due to his failure to pay delinquent taxes.[1]

¶5 Crownover filed suit against Defendants/Appellees County Treasurer of McIntosh County and Board of County Commissioners of McIntosh County (collectively, "County") in the District Court of McIntosh County on August 12, 2010, alleging he was the true owner of the subject property and seeking to quiet title in himself. Crownover alleged that Keel's resale tax deed was void because Crownover received no actual notice of the delinquent taxes or the tax resale. Crownover argued that he did not receive notice because while the notices of delinquent taxes and of the resale were sent to the address he provided to McIntosh County when he purchased the property, Crownover no longer lived at that address. Crownover asserted that the County should have sent notice to the address listed on the last check he wrote for taxes on January 1, 2006. Crownover asserted that had notice been mailed to his correct address and had he received it, he would have immediately paid taxes on the property and would have redeemed it from the tax resale. Accordingly, he claimed he was denied his right to redemption by the County's failure to provide him with notice.

¶6 On June 4, 2013, Crownover moved for summary judgment, alleging that there was no dispute as to the material facts and that

he was denied due process because he did not have actual notice of the delinquent taxes and 2010 tax resale, and that the County's efforts were insufficient to provide him with that notice. The County responded to Crownover's motion for summary judgment on August 20, 2013, and also moved for summary judgment, alleging that it complied with all statutory notice requirements by: 1) mailing notice by certified mail to the address Crownover had originally provided; and 2) publishing notice of the resale in a publication in McIntosh County. The County asserted the burden was on Crownover to provide notice that his address had changed, and that it should not have been required to assume that a single check with a different address constituted that notice.[2]

¶7 In a response to County's motion for summary judgment filed on September 6, 2013, Crownover contended that the notice sent by the County to his old address via certified mail was returned to the County treasurer marked "Not Deliverable as Addressed Unable to Forward."[3] In two separate orders filed on March 11, 2014, the trial court overruled Crownover's motion for summary judgment and granted summary judgment in favor of the County.

¶8 Crownover appealed, filing his Petition in Error and Preliminary Statement on April 7, 2014, in accordance with Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, Ch. 15, App. 1, governing accelerated procedure for summary judgments. This Court issued a show cause order on April 9, 2014, directing Crownover to show cause why his appeal should not be dismissed for lack of an

1. In his Response to Petition in Error, Keel alleges he contacted Crownover to inquire about purchasing the boat and trailer. In his response to Crownover's petition in error, Keel notes he looked for a phone number for Crownover. The fact that Keel apparently found one without undue difficulty supports Crownover's assertion that finding him was not exactly an insurmountable obstacle, even after he moved.

When the parties eventually spoke, Keel alleges they instead reached an agreement wherein Crownover would rent the property from Keel at a monthly rate in order to store the boat and trailer. Keel asserts Crownover paid him rent once by check, in the amount of $150.00, for the months of August and September, 2010, and that

he received no further payment from Crownover after that point.

2. County also asserted that the name on the last check Crownover tendered was Vernon L. Crownover, TTEE, whereas the property was clearly held in the name of Vernon L. Crownover. The County asserted in its response and motion for summary judgment that it had no way of knowing that the name and address on the check was a proper contact point for Vernon L. Crownover, the individual.

3. Crownover attached a copy of the envelope to his response as exhibit A, and that exhibit is included in the record on appeal.

appealable order because the trial court's order granting summary judgment for the County did not dispose of Crownover's claims against Keel. Crownover responded to the show cause order on April 23, 2014, and asserted that adequacy of notice was the controlling issue in determining the validity of Keel's tax deed. Because adequacy of notice to Crownover would determine the validity of the tax deed issued to Keel, Crownover asserted the trial court's order denying his motion for summary judgment was a final order disposing of his claims against all parties, including Keel. This Court agreed, and allowed Crownover's appeal to proceed.

¶9 In an unpublished opinion issued on December 5, 2014, the Court of Civil Appeals, Division III, affirmed the decision of the trial court. The COCA determined that the County completed all the statutory requirements to vest in the County treasurer the authority to issue the tax deed, including mailing notice to Crownover's address of record. The COCA also noted that pursuant to 68 O.S.2011 § 3106, Crownover's failure to receive this notice did not invalidate the sale.[4] Further, the COCA stated that although Crownover claimed the County Treasurer's records showed the envelope sent to his previous address was marked "not deliverable as addressed unable to forward," Crownover did not attach a copy of the envelope and therefore it was not part of the record.

¶10 Crownover filed his Petition for Writ of Certiorari on December 26, 2014, arguing that the COCA erred by incorrectly stating that Crownover failed to attach a copy of the certified mail envelope marked "not deliverable as addressed unable to forward." Crownover further asserts that under the undisputed facts he was entitled to summary judgment as notice via certified mail was insufficient to satisfy due process when the County was aware that he did not receive that notice. He also argues that a simple inquiry on their part would have allowed them to determine his current address and provide actual notice, which they failed to do. This Court granted Crownover's Petition for Certiorari on March 30, 2015, and the cause was assigned to this office on April 1, 2015.

## II.

### STANDARD OF REVIEW .

¶11 A moving party is entitled to summary judgment as a matter of law only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that no genuine issue of material fact exists. *Miller v. David Grace*, 2009 OK 49, ¶10, 212 P.3d 1223; *Davis v. Leitner*, 1989 OK 146, ¶9, 782 P.2d 924. In reviewing the grant or denial of summary judgment, this Court views all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the nonmoving party. *Trinity Baptist Church v. Brotherhood Mut. Ins. Services, LLC*, 2014 OK 106, ¶9, 341 P.3d 75; *Miller*, 2009 OK 49, ¶10, 212 P.3d 1223; *Wathor v. Mut. Assurance Adm'rs*, 2004 OK 2, ¶4, 87 P.3d 559.

¶12 Because a grant of summary judgment is a purely legal issue, this Court's standard of review on appeal is *de novo*. *Trinity*, 2014 OK 106, ¶9, 341 P.3d 75; *Miller*, 2009 OK 49, ¶10, 212 P.3d 1223; *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051. In conducting a *de novo* review of a trial court's legal rulings, this Court possesses plenary, independent, and non-deferential authority to examine the issues presented. *Sheffer v. Carolina Forge Co., L.L.C.*, 2013 OK 48, ¶10, 306 P.3d 544; *Martin v. Ara-*

---

4. The COCA opinion actually cites 68 O.S.2011 § 3601, which is an error as that provision is unrelated to the instant cause. Title 68 O.S.2011 § 3106, the relevant provision, provides in pertinent part:

.... the county treasurer shall give notice by mailing to the record owner of said real property as of the preceding December 31 or later as reflected by the records in the office of the county assessor, which records shall be updat-

ed based on real property conveyed after October 1 each year, a notice stating the amount of delinquent taxes owed and informing the owner that the subject real property will be sold as provided for in Section 3105 of this title if the delinquent taxes are not paid and showing the legal description of the property of the owner being sold. **Failure to receive said notice shall not invalidate said sale.**

Title 68 O.S.2011 § 3106 (emphasis added).

*mark Servs., Inc.,* 2004 OK 38, ¶ 4, 92 P.3d 96.

## III.

### NOTICE TO A PROPERTY OWNER VIA CERTIFIED MAIL PRIOR TO SALE OF THE PROPERTY FOR DELINQUENT TAXES IS INSUFFICIENT TO SATISFY THE REQUIREMENTS OF DUE PROCESS WHEN THAT NOTICE IS RETURNED UNDELIVERED.

¶ 13 The Oklahoma Statutes provide for the eventual sale of real property by the county in which it is located if taxes remain unpaid for a long enough period of time. The applicable statute authorizing the sale of real property for delinquent taxes is 68 O.S. 2011 § 3105, which provides in pertinent part:

> A. The county treasurer shall in all cases, except those provided for in subsection B of this section, where taxes are a lien upon real property and have been unpaid for a period of three (3) years or more as of the date such taxes first became due and payable, advertise and sell such real estate for such taxes and all other delinquent taxes, special assessments and costs at the tax resale provided for in Section 3125 of this title, which shall be held on the second Monday of June each year in each county. The county treasurer shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by law made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the

realty for all of the taxes and special assessments.

**A. Constitutionally adequate notice to an owner of real property is required before that property can be sold for delinquent taxes.**

¶ 14 While 68 O.S.2011 § 3105 authorizes the sale of real property for delinquent taxes, the U.S. Const. amend. XIV, § 1 and Okla. Const. Art. 2, § 7 ensure that no person may be deprived of life, liberty, or property without due process of law.[5] At a minimum, due process requires notice and a meaningful opportunity to appear and be heard. *Edwards v. City of Sallisaw,* 2014 OK 86, ¶ 19, 339 P.3d 870; *Daffin v. State ex rel. Okla. Dep't of Mines,* 2011 OK 22, ¶ 16, 251 P.3d 741.

¶ 15 Accordingly, constitutionally sufficient notice must be given to real property owners before the property is sold for failure to pay taxes. *Jones v. Flowers,* 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("[B]efore forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking."). *See Southwestern Commercial Capital, Inc. v. Cornett Packing Co.,* 2000 OK 19, ¶ 16, 997 P.2d 849; *Luster v. Bank of Chelsea,* 1986 OK 74, ¶ 18, 730 P.2d 506.

¶ 16 Notice to the property owner prior to selling real property for delinquent taxation is also required by statute, and the requirements are set out in 68 O.S.2011 § 3106, which provides:

5. U.S. Const. amend. XIV, § 1 provides:
[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
Okla. Const. Art. 2, § 7 provides:
[n]o person shall be deprived of life, liberty, or property, without due process of law.
Oklahoma's due process clause has a definitional sweep that is coextensive with its federal coun-

terpart. *In Re Adoption of K.P.M.A.,* 2014 OK 85, n. 3, 341 P.3d 38; *Gladstone v. Bartlesville Indep. School Dist. No. 30,* 2003 OK 30, n. 16, 66 P.3d 442; *Fair School Finance Council of Oklahoma, Inc. v. State,* 1987 OK 114, n. 48, 746 P.2d 1135. However, this Court's holdings with regard to state constitutional questions are based on Oklahoma law, which provides *bona fide,* separate, adequate and independent grounds for our decision. *In Re Adoption of K.P.M.A.,* n. 3; *Daffin v. State ex rel. Oklahoma Dept. of Mines,* 2011 OK 22, n. 21, 251 P.3d 741; *Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, ¶ 51, 958 P.2d 128.

The county treasurer, according to the law, shall give notice of delinquent taxes and special assessments by publication once a week for two (2) consecutive weeks at any time after April 1, but prior to the end of September following the year the taxes were first due and payable, in some newspaper in the county to be designated by the county treasurer. Such notice shall contain a notification that all lands on which the taxes are delinquent and remain due and unpaid will be sold in accordance with Section 3105 of this title, a list of the lands to be sold, the name or names of the last record owner or owners as of the preceding December 31 or later as reflected by the records in the office of the county assessor, which records shall be updated based on real property conveyed after October 1 each year and the amount of taxes due and delinquent. If the sale involves property upon which is located a manufactured home the notice shall contain the following language: "The sale hereby advertised involves a manufactured home which may be subject to the right of a secured party to repossess. A holder of a perfected security interest in such manufactured home may be able to pay ad valorem taxes based upon the value of the manufactured home apart from the value of real property." In addition to said published notice, the county treasurer shall give notice by mailing to the record owner of said real property as of the preceding December 31 or later as reflected by the records in the office of the county assessor, which records shall be updated based on real property conveyed after October 1 each year, a notice stating the amount of delinquent taxes owed and informing the owner that the subject real property will be sold as provided for in Section 3105 of this title if the delinquent taxes are not paid and showing the legal description of the property of the owner being sold. Failure to receive said notice shall not invalidate said sale. The county treasurer shall charge and collect in cash, cashier's check or money order, in addition to the taxes, interest and penalty, the publication fees as provided by the provisions of Section 121 of Title 28 of the Oklahoma Statutes, and Five Dollars ($5.00) plus postage for mailing the notice, which shall be paid into the county treasury or whatever fund the publication and mailing fee expenses came from, and the county shall pay the cost of the publication of such notice. But in no case shall the county be liable for more than the amount charged to the delinquent lands for advertising and the cost of mailing.

¶ 17 The parties do not dispute that the County satisfied the requirements of 68 O.S. 2011 § 3106 by publishing notice in a newspaper in McIntosh county and sending notice by certified mail to the address Crownover had originally provided. The County asserts that its compliance with the statute was sufficient to satisfy the requirements of due process, even if Crownover did not receive actual notice. The County points specifically to the portion of 68 O.S.2011 § 3106 which states: "[f]ailure to receive said notice shall not invalidate said sale." Crownover asserts that mere compliance with the statute was insufficient to satisfy due process where the County knew that Crownover did not have actual notice, because the certified envelope was returned marked as undeliverable as addressed and unable to forward.

¶ 18 This Court has long recognized that the statutory notice provisions for a tax sale are mandatory, and the absence of such notice nullifies the sale of the property. *Garcia v. Ted Parks, L.L.C.,* 2008 OK 90, ¶ 13, 195 P.3d 1269; *Smith v. Bostaph,* 1924 OK 937, ¶ 0, 229 P. 1039 (overruled on other grounds by *Wilson v. Levy et al.,* 1929 OK 457, 140 Okla. 74, 282 P. 679). However, compliance with the notice provisions 68 O.S. 2011 § 3106 is not in and of itself sufficient if the notice provided is constitutionally deficient:

when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

## B. Notice via certified mail does not satisfy the requirements of due process when it is returned undelivered and other reasonable steps can be taken to supply notice.

¶ 19 The notice requirement of due process is not satisfied where, as here, notice sent via certified mail is returned undelivered and no further action is taken. The decision of the United States Supreme Court in *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), is directly on point concerning notice required to satisfy the requirements of due process prior to sale of real property for delinquent taxation. In *Jones*, under similar facts to this cause, the Supreme Court of the United States determined that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones*, 547 U.S. at 225, 126 S.Ct. 1708. The tax sale in *Jones* occurred after the State published notice in a newspaper and attempted to notify the property owner—who no longer lived on the property—by certified mail twice, with the notice returned unclaimed both times. *Jones*, 547 U.S. at 223–224, 126 S.Ct. 1708.

¶ 20 The *Jones* Court reaffirmed that the due process clause of the United States Constitution does not require that a property owner receive actual notice before the government may take his property. 547 U.S. at 226, 126 S.Ct. 1708; *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). However, the Court also noted that:

> due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."
>
> . . . .
>
> In *Mullane* we stated that "when notice is a person's due . . . [t]he means employed

must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it" . . .

*Jones*, 547 U.S. at 226, 229, 126 S.Ct. 1708 (quoting *Mullane v. Central Bank & Trust Co.*, 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

In *Jones*, much as in this cause, the State argued that it satisfied the notice requirement of due process through the act of sending notice via certified mail. The Court disagreed, holding:

> **We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed.** If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one "desirous of actually informing" the owners would simply shrug his shoulders as the letters disappeared and say "I tried." Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman.

*Jones*, 547 U.S. at 229, 126 S.Ct. 1708 (emphasis added).

The *Jones* court also stated succinctly that the property owner's failure to keep his address updated, which was required by statute, **did not** result in the owner somehow forfeiting his right to constitutionally sufficient notice. 547 U.S. at 229, 126 S.Ct. 1708. Further, "the common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." 547 U.S. at 232, 126 S.Ct. 1708.

¶ 21 While the *Jones* Court determined that the State should have taken other reasonable measures to reach the property own-

er, it stopped short of requiring the state to search elsewhere for an address for the property owner, noting that an open-ended search for a new address would unduly burden the State. 547 U.S. at 236, 126 S.Ct. 1708. Rather, the Court suggested reasonable measures such as posting notice on the property door, or even sending notice by regular mail, which could at least have resulted in its delivery and presence on the property. *Jones,* 547 U.S. at 235, 126 S.Ct. 1708. The Court noted that it was not its responsibility to redraft the State's notice statute, but it was sufficient that the Court was confident additional reasonable steps were available for Arkansas to employ before taking the property. *Jones,* 547 U.S. at 238, 126 S.Ct. 1708. The Court concluded:

> There is no reason to suppose that the State will ever be less than fully zealous in its efforts to secure the tax revenue it needs. The same cannot be said for the State's efforts to ensure that its citizens receive proper notice before the State takes action against them. In this case, the State is exerting extraordinary power against a property owner-taking and selling a house he owns. It is not too much to insist that the State do a bit more to attempt to let him know about it when the notice letter addressed to him is returned unclaimed.

*Jones,* 547 U.S. at 239, 126 S.Ct. 1708.

¶ 22 Federal jurisprudence is not the only indication that notice via certified mail is insufficient to satisfy the requirements of due process before a sale of real property for delinquent taxation when the government is aware that the notice was not received by the property owner. Prior decisions of this Court also firmly indicate that the County was required to do more under these circumstances than simply shrug and claim it complied with the notice statute.

 ¶ 23 As stated previously, this Court has long recognized that the statutory notice provisions for a tax sale are mandatory, and the absence of such notice nullifies the sale of the property. *Garcia,* 2008 OK 90, ¶ 13, 195

P.3d 1269. This Court has also previously determined that notice by publication alone is insufficient to satisfy the requirements of due process when the party entitled to notice is readily identifiable. *Garcia,* 2008 OK 90, ¶ 13, 195 P.3d 1269; *Southwestern Commercial Capital, Inc. v. Cornett Packing Co.,* 2000 OK 19, ¶ 16, 997 P.2d 849.

¶ 24 This cause is not the first time this Court has examined notice requirements prior to the sale of real property for delinquent taxes through the lens of constitutionally-required due process. In *Luster v. Bank of Chelsea,* 1986 OK 74, ¶ 18, 730 P.2d 506, this Court held that a tax resale deed was void where the county treasurer failed to provide the statutorily-required [6] notice to the true owner of the real property, because the tax rolls erroneously showed another individual as the owner. Noting that simple compliance with the notice requirements of the statute might not satisfy due process, this Court stated:

> [a]lthough the Lusters argue the trial court correctly found that all matters pertaining to the tax certificates and the sale at the tax resale were in compliance with the statutes, this is not determinative of this appeal. **It is the totality of the circumstances and conditions of each individual case that determines if the constitutional requirements of due process are satisfied.** *Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956); *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. Due to no fault of Mrs. Thomas, the County Treasurer did not mail written notice of either the original sale or the resale of the property to her because the tax rolls erroneously reflected another person as record owner. The publication advertising the resale similarly named Mr. Vaughn as the owner rather than the Thomases. Concededly, the published notice of the original sale listed Mr. Thomas as the owner.

*Luster,* 1986 OK 74, ¶ 17, 730 P.2d 506 (emphasis added).

---

6. The notice provision at issue in this cause was 68 O.S. Supp. 1984 § 24312; a prior incarnation of 68 O.S.2011 § 3106.

¶ 25 In *Wells Fargo Credit Corp. v. Ziegler*, 1989 OK 113, ¶ 6, 780 P.2d 703, this Court determined that the mere act of sending notice via certified mail, in the absence of a return receipt, was insufficient to constitute actual notice.[7] In *Ziegler*, the holders of the tax deed argued, much as the County does here, that pursuant to the statute sending notice via certified mail was sufficient regardless of whether the mailed notice was received. This Court disagreed, holding:

> [t]his is a too narrow construction. The statute requires the county treasurer to exercise reasonable diligence in locating the mortgagee. Furthermore, "prior to an action which will affect an interest in life, liberty or property protected by the Due Process Clause of the Fourteenth Amendment, a state must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180, 185 (1983) citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), "The notice must be of such nature as reasonably to convey the required information....." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. The notice as given in this case neither comports with the statutory mandate of reasonable diligence in locating the mortgagee nor with the constitutional requirement of due process. The absence of a return receipt was a red flag alerting the County Treasurer to exercise reasonable diligence in locating Wells Fargo. Yet, the County Treasurer went no further in its attempt to provide notice in this case. The act of mailing, in and of itself, does not constitute actual notice. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party...." Mennonite Bd. of Missions, 103 S.Ct. at 2712. In the instant case, the

act of mailing without proof of receipt of notice falls short of the exercise of reasonable diligence in assuring actual notice. *Ziegler,* 1989 OK 113, ¶ 6, 780 P.2d 703.

¶ 26 More recently, this Court examined required notice in *Garcia v. Ted Parks, L.L.C.,* 2008 OK 90, 195 P.3d 1269. Under the facts of that cause, where the record owner was living on the property and her whereabouts were known, this Court determined that nothing less than actual notice was sufficient to meet the requirements of due process prior to sale of the property for delinquent taxation. This Court declared:

> [c]learly, to the extent that the statute implies that the failure to give actual notice to a record owner who was living on the property and whose whereabouts were known does not affect the validity of the tax sale, it conflicts with constitutionally protected due process notice requirements.

*Garcia,* 2008 OK 90, ¶ 15, 195 P.3d 1269.

**C. Under the facts of this case, Crownover did not receive constitutionally adequate notice of the pending sale of his property for delinquent taxes.**

¶ 27 It is undisputed that Crownover failed to timely pay taxes on the subject property. It is also undisputed that the County fulfilled the notice requirements of 68 O.S.2011 § 3106 by publishing notice and by sending notice via certified mail to the address it had been given for Crownover. The County asserts this was sufficient notice, regardless of whether the notice was actually received by Crownover, and further cites Crownover's own need to notify them of an address change and his presumed knowledge that he would owe taxes.

¶ 28 However, the record contains undisputed evidence that the notice to Crownover sent via certified mail was never received by him, was in fact returned to the County marked as "not deliverable as addressed unable to forward." The Court of Civil Appeals erred by declaring that this envelope was mentioned but not actually attached to the

---

7. *Ziegler* concerned notice to a mortgagee of real property being sold for unpaid taxes, which at the time was controlled by 68 O.S. Supp. 1986 § 24331, with different but also quite similar language and requirements to 68 O.S.2011 § 3106.

record. Pursuant to *Jones,* when confronted with the knowledge that its notice via certified mail was not delivered and therefore not seen by Crownover, the County was required to attempt some other reasonable method of supplying notice to Crownover. 547 U.S. at 225, 126 S.Ct. 1708. The Prior decisions of this Court also indicate that simple compliance with the notice statute is not always enough to satisfy the requirements of due process. *See Garcia,* 2008 OK 90, ¶ 15, 195 P.3d 1269; *Ziegler,* 1989 OK 113, ¶ 6, 780 P.2d 703.

¶ 29 The County could have taken other reasonable steps to attempt to provide Crownover with notice, without necessarily being obligated to conduct a lengthy hunt for a correct address. *See Jones,* 547 U.S. at 235–36, 126 S.Ct. 1708. Like the Supreme Court of the United States, we do not think that a person who actually desired to inform a real property owner of an impending tax sale of the real property would do nothing when a certified letter sent to the owner is returned unclaimed. *Jones,* 547 U.S. at 229, 126 S.Ct. 1708. The return of the certified notice undelivered was a red flag that should have tipped off the County it needed to follow up. *Ziegler,* 1989 OK 113, ¶ 6, 780 P.2d 703. The County's failure to make any further effort resulted in Crownover being denied constitutionally sufficient notice of the eminent sale of his property.

¶ 30 The *Jones* decision also deals succinctly, from the standpoint of U.S. Const. amend. XIV, § 1, with the County's claims concerning Crownover's obligations. Crownover's failure to timely pay taxes and his failure to provide an updated address to the County did not relieve it of its obligation to provide him with constitutionally adequate notice prior to selling his property. *Jones,* 547 U.S. at 229, 232, 126 S.Ct. 1708. We agree.

## CONCLUSION

¶ 31 Under the undisputed facts of this cause, Crownover was not provided with constitutionally adequate notice prior to the sale of his property for delinquent taxes. *Jones,* 547 U.S. at 225, 126 S.Ct. 1708. *See Ziegler,* 1989 OK 113, ¶ 6, 780 P.2d 703; *Luster,* 1986 OK 74, ¶ 18, 730 P.2d 506. Accordingly, the

tax sale and resultant resale tax deed are void. *Garcia,* 2008 OK 90, ¶ 15, 195 P.3d 1269; *Ziegler,* 1989 OK 113, ¶ 6, 780 P.2d 703; *Luster,* 1986 OK 74, ¶¶ 18–19, 730 P.2d 506. Summary judgment in favor of the County was improper. The opinion of the Court of Civil Appeals is vacated, the trial court's order granting summary judgment in favor of the County is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, EDMONDSON, COLBERT, and GURICH, JJ., concur.

WINCHESTER (by separate writing) and TAYLOR, JJ., dissent.

WINCHESTER, J., with whom TAYLOR, J. joins, dissenting,

¶ 1 The Oklahoma State Constitution, echoing the United States Constitution, provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Although, as the majority notes, the "definitional sweep" of this clause is coextensive with its federal counterpart, this Court's decisions with regard to state constitutional questions are based on Oklahoma law. *In Re Adoption of K.P.M.A.,* 2014 OK 85, ¶ 17, n. 3, 341 P.3d 38, 44.

¶ 2 The United States Supreme Court has held that, to comport with the Due Process Clause, States must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Court in *Dusenbery v. United States,* 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002), expressly noted, however, that "heroic efforts" are not required. To the contrary, the Supreme Court has rejected "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way [of the State]." *Mullane,* 339 U.S. at

313–14, 70 S.Ct. 652. In determining whether an individual has been afforded due process, therefore, courts must balance the State's interest in efficiently managing its administrative system and an individual's interest in adequate notice. See *id.* at 314, 70 S.Ct. 652. To that end, the Supreme Court has recognized that states need not achieve actual notice in order to satisfy the requirements of the Due Process Clause. See *Dusenbery,* 534 U.S. at 169–70, 122 S.Ct. 694.

¶ 3 Oklahoma's statute governing notice of delinquent taxes, 68 O.S.2011, § 3106,[1] mandates that—prior to selling real property for which taxes have been unpaid for three or more years—county treasurers publish notice of taxes owed upon the property, as well as send notice by certified mail to the record owner of the property. Nothing in the text of the law requires that the county treasurer take additional steps to ensure the property owner receives *actual* notice. In fact, the statute notes that "[f]ailure to receive said notice shall not invalidate said sale." *Id.*

¶ 4 In rare cases, however, this Court has required that the State do more than simply comply with the letter of the law in order to provide due process. But the only circumstances in which notice by mail and publication is inadequate under the Due Process Clause involve "situations where the state or local government knew at the outset that its notice efforts were destined to fail and knew how to rectify the problem prior to sending notice." *Id.* at 244 (citing *Robinson v. Hanrahan,* 409 U.S. 38, 39, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (per curiam) (intended recipient known to be in jail); *Covey v. Town of Somers,* 351 U.S. 141, 145, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) (intended recipient known to be incompetent and without a guardian)). In those situations, the county treasurer certainly has a responsibility to comply with the statute and take steps to ensure proper notice is served. But this duty arises from the implicit requirement that notice of an impending tax sale must be made in good faith—not from any requirement that county treasurers must always take steps to ensure actual notice. See *Mullane,* 339 U.S. at 315, 70 S.Ct. 652.

¶ 5 Even though the county treasurer in this case knew from the certified mail receipt that the attempted delivery of notice had been unsuccessful, he certainly did not believe at the outset that his efforts were "destined to fail." A certified mail receipt verifies "that an article was delivered or that a delivery attempt was made."[2] The absence of any receipt, therefore, indicates that the mail was lost, delayed, or otherwise rerouted from its intended destination, and should undoubtedly trigger an additional duty for the county treasurer to resend the mail or take other steps to comply with the statute. A "not deliverable as addressed" receipt, on the other hand, simply indicates that the certified mail service was unable to make actual contact with the property owner. Because the statute does not require the county treasurer to provide actual notice, and because a good-faith attempt at notice is sufficient under the Due Process Clause, see *Mullane,* 339 U.S. at 315, 70 S.Ct. 652, service that results in a "not deliverable as addressed" receipt (in addition to publication) satisfies the statutory and constitutional requirements.

¶ 6 A majority of this Court would essentially redraft 68 O.S.2011, § 3106 and impose unreasonable and impractical burdens on the State in the exercise of its administrative duties. Specifically, the majority suggests that the county treasurer should have located the check with which the property owner last paid taxes. See *supra,* at ¶¶ 28–29. Not

---

**1.** The statute in pertinent part reads: "The county treasurer, according to the law, shall give notice of delinquent taxes and special assessments by publication once a week for two (2) consecutive weeks at any time after April 1, but prior to the end of September following the year the taxes were first due and payable, in some newspaper in the county to be designated by the county treasurer.... In addition to said published notice, the county treasurer shall give notice by mailing to the record owner of said real property as of the preceding December 31 or later as reflected by the records in the office of the county assessor, which records shall be updated based on real property conveyed after October 1 each year...."

**2.** United States Postal Service, *Certified Mail Receipt* (Form 3800), *available at* https://store.usps.com/store/browse/productDetailSingleSku.jsp?productId=P_FORM_3800.

only was the check in this case written more than three years prior to the notice of delinquent taxes, but also there was no indication that the address on the check was in fact the owner's new place of residence. Many people use checks that do not match their current addresses, either for the sake of convenience (*e.g.*, so they do not need to order new checks after changing addresses) or due to special circumstances (*e.g.*, when somebody other than the property owner pays the taxes). But under the majority's logic, 68 O.S. 2011, § 3106 requires that the county treasurer record every address on every check and every other document that comes to his office, and then send notice to each of those addresses in order to comport with due process. The majority demands that, whenever a county treasurer doubts whether an interested party has actually received notice, he must consider additional methods to provide such notice, including, but not limited to, sending certified mail to every address associated with the property owner, whether or not any of those addresses is the address of record in the county treasurer's office.[3] And if *those* notices are ineffective, then the treasurer must consider *additional* methods, *ad infinitum*, to the point that he would effectively be required to achieve actual notice.

¶ 7 Not only does the majority's interpretation of the statute disregard existing case law holding quite clearly that county treasurers need not achieve actual notice, it also places counties at the mercy of delinquent taxpayers. To avoid being served notice, tax evaders could simply avoid contact with process servers standing on their doorsteps, or move to a different address and neglect to tell the county treasurer. Under the majority's holding, such evasive antics would require the treasurer to employ additional tactics to make contact with the property owner until either all possible methods are exhausted or the treasurer decides that the task is not worth its cost. Such requirements increase the amount of time and money that must be expended by the county to comply with the law. Those additional costs are then passed on to citizens who actually do pay their taxes.

¶ 8 Both parties and the majority recognize that the McIntosh County Treasurer in this case complied with the requirements of 68 O.S.2011, § 3106. It is not the fault of the county that Crownover did not report his change of address, and it should not fall to the county to engage in a paper chase to locate a missing person. See *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 792, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (holding that "notice mailed to [the affected party's] last known available address" is sufficient to satisfy due process). The constitutional requirement is not that individuals be provided with *every* process of law, only *due* process of law. What the majority opinion— and the Supreme Court in *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006)—fails to supply is a clear definition of due process. Without that clarity, there is no limit to how far counties must go to provide notice sufficient under the Due Process Clause. Because in this case the county treasurer gave due process in supplying notice under the terms of the statute, the ruling of the Court of Civil Appeals should be affirmed. For these reasons, I respectfully dissent.

---

**3.** Because the majority does not specify what "other reasonable method[s]" are required to provide due process, such methods could easily include browsing phone books and searching the Internet for addresses associated with the property owner. Those resources are much easier for the county treasurer to locate (and maintain) than is a three-year-old check, but surely no one would mandate that county officials read through phone books to discharge their statutory duties. Yet that is the effect of the majority's argument.