OPINION BY JERRY L. GOODMAN, JUDGE:
¶1 State of Oklahoma, ex rel. Oklahoma Tourism and Recreation Department (OTRD) appeals the trial court's February 24, 2017, Order Following Remand requiring OTRD to provide a severance benefit package to several State employees (Employees) represented by the Oklahoma Public Employees Association (OPEA) pursuant to the "Lake Murray Lodge Statute," 74 O.S.Supp.2006, § 2242.1 (LMLS). The trial court found Oklahoma's State Government Reduction-in-Force and Severance Benefits Act (RIF) provisions ( 74 O.S.2011 and Supp. 2012, §§ 840-2.27A through 840-2.27I ), "were not applicable" to Employees, but the LMLS was, and further ruled that the LMLS was constitutional.
¶2 OTRD appeals contending that, though the trial court correctly found the RIF provisions "were not applicable" to Employees, it erred when it found the LMLS applied to Employees and further erred when it found the LMLS to be constitutional.
¶3 OEPA counter-appeals the same order, claiming the trial court erred when it found the RIF provisions "were not applicable" to Employees. OPEA contends Employees "were entitled to severance benefits" prescribed by both LMLS and RIF,[1] and further agreed that the LMLS is constitutional.
¶4 In this first impression case, we are asked to interpret the two severance package statutes and define their relationship to each other. Based on our review of the facts and applicable law, we hold Employees are subject to the RIF statutes, if they otherwise qualify; that under these facts Employees are not eligible for the severance benefits pursuant to the LMLS, and; we need not address the constitutionality of the LMLS. The trial court's order is affirmed in part, and reversed in part.
BACKGROUND
¶5 This is the second appeal to this Court by these parties. This Court has previously addressed this matter in appeal No. 110,034, styled Oklahoma Public Employees Association; Mike Hancock; Doris Long; Bradley Daftari; Mark Barnes; Stanley Philpot; Lester Rowland; and Mary Mayes v. State Of Oklahoma, ex rel., Oklahoma Tourism and Recreation Department (OPEA I ).[2] At the conclusion of our opinion in OPEA I , this Court stated:
The matter is remanded to the trial court to make a finding of fact as to whether Affected Employees were in fact subject to the RIF Act. Next, the matter is remanded to the trial court with directions to order the parties to address the apparent conflict between § 2242.1 and § 840-2.27D. Because the constitutionality of these statutes may be involved, the Assistant Attorney General representing OTRD shall comply with the notice requirements of 12 O.S.2011, § 2024(D).
¶6 Following remand, an evidentiary hearing was held, and the trial court entered an *355 Order Following Remand on February 24, 2017, which made findings of fact and conclusions of law.[3] The Order states:
1. The provisions of the RIF Act are not applicable to the Plaintiffs;
2. The Lake Murray Lodge Statute is applicable to the Plaintiffs and the OTRD must comply with [the LMLS;]
3. The Lake Murray Lodge Statute applies both to land owned and leased by the State of Oklahoma, and;
4. The Lake Murray Lodge Statute is constitutional.[4]
¶7 Both parties have appealed. The OPEA, on behalf of Employees, claims both the RIF Act and the LMLS applies to them, and not just the LMLS. The OTRD also appeals, claiming the LMLS does not apply to Employees, and that the LMLS is unconstitutional.
¶8 The appellate record contains the following additional facts necessary to our analysis of the trial court's order.
¶9 Employees were, at the time of the filing of their August 10, 2011, Petition for Declaratory Judgment and Injunctive Relief, "tenured, classified employees."[5]
¶10 According to the 2013 affidavit of the Executive Director of the OTRD,[6] in 2011, the OTRD considered closing seven of its 35 parks due to budgetary shortfalls. Of those seven parks, the OTRD owned only two (Heavener Runestone State Park and Boggy Depot State Park). The five other parks were not owned by the OTRD, but were leased from third parties.[7] However, ultimately, OTRD did not close any parks. Rather, it transferred either ownership or operation, or both, to third parties, pursuant to its authority set out in 74 O.S. 2011, § 2224, thereby necessitating the transfer of those Employees working at those positions to be reassigned to other parks.[8]
¶11 OTRD employees assigned to work at those parks were notified they would be transferred to new duty positions within the Department at the same rate of pay, benefits, and classification. In some instances, the new duty positions were at various distances from their current posts.[9] Most transferred; some did not. Some retired or voluntarily separated from service to work elsewhere. Others refused to report to work at the new duty station and sued the OTRD for failing to provide them severance benefits pursuant to provisions set out in the RIF and LMLS severance statutes. The OTRD refused to provide severance benefits, claiming the employees were not separated from service, but merely transferred, and the RIF provisions were therefore not applicable.
STANDARD OF REVIEW
¶12 We are asked to interpret the meaning of statutes and review the trial court's application of fact to those statutes. We do so using the de novo standard of review.
The issues of a statute's constitutional validity and of its construction and application are questions of law subject to de novo review. Lee v. Bueno , 2016 OK 97, ¶ 6, 381 P.3d 736 ; Butler v. Jones ex rel., State ex rel., Okla. Dep't of Corrections , 2013 OK 105, ¶ 5, 321 P.3d 161 ;
*356 Gilbert v. Security Finance Corp. of Okla. , 2006 OK 58, ¶ 2, 152 P.3d 165. Under that standard on appeal, this Court assumes plenary, independent, and non-deferential authority to reexamine the lower tribunal's legal rulings. Lee , 2016 OK 97, ¶ 6, 381 P.3d 736 ; Crownover v. Keel , 2015 OK 35, ¶ 12, 357 P.3d 470 ; Butler , 2013 OK 105, ¶ 5, 321 P.3d 161.
Brown v. Claims Mgmt. Res. Inc ., 2017 OK 13, ¶ 10, 391 P.3d 111, 115.
ANALYSIS
I.
Applicability of RIF Provisions under these Facts
¶13 This issue was raised in both the OTRD's petition in error and Employees' counter-petition in error. The trial court held the RIF provisions "were not applicable" to Employees.[10] We interpret the trial court's choice of phrase to mean that, under these facts, Employees do not meet the requirements of the RIF provisions. The OTRD contends that decision was correct; Employees argue it was error. We agree with the OTRD and hold that, under the facts presented, the individual Employees have failed to show they qualify for RIF severance benefits, and the trial court's holding on this issue was correct.
¶14 Section 2.27D of the RIF statutes states:
Severance benefits shall be given to the following categories of affected employees: permanent classified affected employees ... (emphasis added).
¶15 The record reflects that Employees were admittedly tenured, classified employees. Therefore, Employees, if they otherwise qualify by meeting the prerequisites of the RIF provisions, would be entitled to those benefits. The narrower question is, however: did Employees meet the RIF requirements? We first examine those requirements.
¶16 Section 840-2.27B provides definitions under the RIF provisions.
¶17 "Affected employees" means classified employees in affected positions, § 2.27B (2). "Affected positions" means positions being abolished or positions which are subject to displacement action, § 2.27B (3). "Displacement" or "displace" means the process of an employee accepting an offer of employment to an occupied or funded vacant position, § 2.27B (5). "Reduction-in-force" means abolition of positions in an agency or part of an agency and the corresponding nondisciplinary removal of affected employees from such positions through separation from employment or through displacement to other positions. Reduction-in-force may also include reorganizations, § 2.27B (11). "Reorganization" means the planned elimination, addition or redistribution of functions or duties either wholly within an agency, any of its subdivisions, or between agencies, § 2.27B (12). "Severance benefits" means employee benefits provided by the State Government Reduction-in-Force and Severance Benefits Act to affected employees separated through a reduction-in-force, § 2.27B (13).
¶18 Therefore, under the facts in this case, to qualify for severance benefits under the RIF provisions, an applicant must be an Affected Employee, i.e. , a classified employee, serving in an affected position that was either abolished or subject to a displacement action, such as in the case wherein the employee currently occupying a position is displaced by another employee accepting an offer of employment into that same position, and who as a result of being displaced by another employee, was separated from service with the State.
¶19 Alternatively, a classified employee who was separated from service due to a reduction in force because their position was reorganized, i.e ., the position no longer exists due to "planned elimination, addition or redistribution of functions or duties either wholly within an agency," § 2.27B(12), would also qualify for severance benefits.
¶20 It appears from this record that despite the transfer of the ownership and/or *357 operations of the state parks to third parties, none of Employees were separated from service as a result of OTRD's actions. Rather, they were offered their same state jobs, duties, rates of pay, and seniority, albeit at a different duty position. "A state agency shall have sole and final authority to designate the place or places where its employees shall perform their duties." 74 O.S.2011, § 840-4.19.
II.
Distance from Work not a Factor
¶21 We reject Employee's argument that the trial court must consider "the distance of available work from his residence" as found in 40 O.S.2011, § 2-408(1). That phrase is part of the Employment Security Act of 1980, which codifies the qualifications for unemployment benefits. The Employment Security Act will provide benefits to unemployed persons who cannot obtain "suitable work" as defined in § 2-409. Section 2-408(1) expands the § 2-409 factors defining "suitable work" to include "length of his unemployment, his prospects for obtaining work in his customary occupation, the distance of available work from his residence and prospects for obtaining local work."
¶22 The Employment Act's purpose is to financially assist an unemployed person while they are seeking gainful employment, while the RIF act is designed to financially assist an already-employed state employee's involuntary transition to unemployment. The two statutes are at cross-purposes and this Court will not graft a requirement from one to the other. The requirement to consider distance from work when determining whether a job is suitable for purposes of unemployment benefits is not found in the RIF statutes, and is not compatible with any of its purposes.
¶23 Under these facts, the trial court's order that Employees have not demonstrated they are otherwise eligible for severance benefits under the RIF statutes is supported by the record and is affirmed.
III .
Employees Claim the LMLS is Applicable to them and OTRD Must Comply with the LMLS
A. The Lake Murray Lodge Statute
¶24 In 2005, the Legislature enacted the Oklahoma Tourism, Parks and Recreation Enhancement Act, 74 O.S.2011, §§ 2200 through 2276.3. Included in the Act was the following provision, under the subsection "Operations Personnel."
The following offices and positions in the Oklahoma Tourism and Recreation Department shall be in the unclassified service and shall not be subject to the Merit System of Personnel Administration:
5. Any position in the Division of State Parks utilized in the operation and administration of state resorts, cabins, lodges, and golf courses. 74. O.S. 2011, § 2242.
¶25 In 2006, § 2242 of the Act was amended to add § 2242.1. This amendment is composed of two sentences, only the second of which is relevant to this appeal.[11] That section states:
Further, the Oklahoma Tourism and Recreation Department is hereby directed to develop a severance package for all employees of the Department affected by the closure of any state lodge or park facility owned by the Department.
This is the Lake Murray Lodge Statute (LMLS).
¶26 Clearly, the Legislature intended to offer severance packages to all, i.e ., classified and unclassified employees of the OTRD. Such is permitted by the RIF statutes:
Pursuant to this section and Section 840-5.1A of this title, state agencies may pro vide *358 severance benefits provided by this subsection to regular unclassified employees with one (1) year or more continuous state service who are separated from the state service for budgetary reasons; however, state agencies shall offer regular unclassified state employees with one (1) year or more continuous state service who are separated from the state service the same severance benefit as the affected employees in a reduction-in-force if the unclassified employees' separation is as a result of the conditions causing the agency to implement a reduction-in-force . (Emphasis added).
74 O.S.2011 and Supp. 2012, § 840-2.27D.
¶27 The LMLS uses the term "severance package." This phrase is not defined in the LMLS; however, the RIF statute, § 840-2.27B(13), uses the term "severance benefits." As the purpose of both the LMLS and RIF statutes are to define those individuals who may be eligible for additional compensation in the event of an involuntary separation from state service, we interpret the LMLS term "severance package" to be the functional, if not practical, equivalent to the RIF term "severance benefit."
¶28 The LMLS next uses the phrase "all employees of the Department affected...." The inclusion of the words "of the Department" is arguably superfluous, as the LMLS is directed specifically to the Oklahoma Tourism and Recreation Department, and no other. Thus, the phrase can be reduced to its essentials thusly: "All employees ... affected." Section § 840-2.27B(2) of the RIF statutes defines "Affected Employees." We again equate the phrase "All employees ... affected" as used in the LMLS as the equivalent of "Affected Employees" as used in the RIF statutes.
¶29 Further, the LMLS uses the "closure of any state lodge or park facility owned by the Department" as the event which, if it results in an employee's separation of service from the OTRD, will bestow eligibility to that employee to the RIF provisions. We do not interpret the LMLS to compel the OTRD to create a separate, parallel, RIF-like severance package protocol; instead, the LMLS is merely the means by which an unclassified OTRD employee may become eligible for RIF benefits, if otherwise qualified.
¶30 Our interpretation of these phrases as described is further guided by a few basic premises. First, both RIF and LMLS define those employees who may be entitled to additional benefits because of involuntary severance from state service. Second, the RIF statutes only permit severance benefits to be paid to "Affected Employees," and no other. Third, an interpretation of the LMLS that does not bring the OTRD's employees under the RIF statutes, and thus permit the possibility of severance benefits, would ignore the clear intent of the LMLS to provide such benefits. Therefore, we reject the OTRD's argument regarding the phrase "all employees of the Department affected by the closure ..." which ties the word "affected" to the word "closure" (of any state lodge or park facility). That interpretation would lead to uncertainty and would not qualify an unclassified OTRD employee as an Affected Employee, which by RIF definition is the only classification of employee eligible to claim severance benefits.
In the interpretation of statutes, we do not limit our consideration to a single word or phrase. Instead, we construe together the various provisions of relevant enactments, in light of their underlying general purpose and objective, to ascertain legislative intent. World Publishing Co. v. Miller , 2001 OK 49, ¶ 7, 32 P.3d 829, 832 ; McNeill[v. City of Tulsa] , supra , 1998 OK 2 at ¶ 11, 953 P.2d [329] at 332. "Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context and they must harmonize with other sections of the act to determine the purpose and intent of the legislature." McNeill , supra, at ¶ 11, citing Groendyke Transport Inc. v. Gardner , 1960 OK 153, 353 P.2d 695.
State ex rel. Oklahoma State Dep't of Health v. Robertson , 2006 OK 99, ¶ 7, 152 P.3d 875, 878.
¶31 Reading §§ 2242, 2242.1, and 840-2.27D together, we hold the Legislature intended to allow otherwise qualified OTRD unclassified employees, who were separated from service due to "conditions causing the *359 agency to implement a reduction-in-force" to be offered the same RIF benefits as would be offered to classified employees under similar circumstances, assuming they otherwise qualified for those RIF benefits.
¶32 Applying this interpretation of the LMLS to the facts, Employees would not be eligible for the RIF benefits set out in the LMLS, as they, as classified employees, were already subject to the RIF statutes, assuming they otherwise qualified. Nowhere in the statutes can be found the suggestion that otherwise qualified Employees should be offered severance benefits pursuant to both the RIF and LMLS, or one if not the other, simply because they are OTRD employees whose job descriptions were set out in the LMLS. Such an interpretation, i.e. , permitting double benefits, would lead to an absurdity.
¶33 Turning to the trial court's order in this regard, the trial court held:
The Lake Murray Lodge Statute is applicable to plaintiffs and the OTRD must comply with the LMS statute;
¶34 The trial court's statement that "the Lake Murray Lodge Statute is applicable to the plaintiffs" is accurate only in a broad, general sense in that otherwise qualified unclassified employees of the OTRD would come within the LMLS ambit. However, under these facts, Employees are already subject to the RIF statutes, rendering the intent of the LMLS unnecessary as to them. Therefore, we reverse the trial court's order, and hold the OTRD must comply with the LMLS by providing otherwise qualified unclassified OTRD employees severance benefits pursuant to the RIF statutes.
IV.
Scope of LMLS
¶35 The trial court held: "The LMS statute applies both to land owned and leased by State." The OTRD contends this was error. We agree.
¶36 The trial court's ruling is erroneous because the LMLS clearly applies only to "any state lodge or park facility owned by the Department." This does not include any state lodge or park facility "leased" by the Department. The term "lease" is not found in the LMLS, and cannot be injected into the definition. Owning property and leasing property describe distinct ownership interests.
¶37 Our analysis need not proceed further, however, as under the evidentiary material in this case, only one of Employees was previously assigned to work at properties actually owned by the OTRD, Heavener Runestone State Park. The remaining Employees were previously assigned to positions on property leased from third-party owners.
¶38 Further, according to the record, that single employee was not previously assigned to property owned by the OTRD which contained a state lodge or park facility. The LMLS uses the modifier "facility" when addressing OTRD property. Had the Legislature intended the LMLS to refer to parks in general, it would not have so modified that term.
¶39 Therefore, we hold the trial court's expansive interpretation of the LMLS to include all property owned and leased by the OTRD was erroneous. The LMLS applies only to property owned by the OTRD. Further, none of Employees were previously assigned to such property, and therefore cannot avail themselves of the LMLS provisions at this time.
V.
Is the LMLS Constitutional?
¶40 Because we have held that, under these facts the LMLS does not afford Employees any severance benefits because they have not established eligibility for any benefits generally provided for in the LMLS, we need not address the OTRD's claim the LMLS is unconstitutional.
CONCLUSION
¶41 We hold the Employees, as classified employees, are subject to the RIF statutes, and, if they otherwise show eligibility under the RIF statutes, they could be entitled to severance benefits. To the degree the trial court's order holding that the RIF provisions *360 "are not applicable" to Employees can be interpreted to mean they are subject to, but have not established their eligibility for, RIF benefits, it is affirmed.
¶42 We hold Employees, as classified employees, are not subject to the LMLS under these facts, as they are already subject to the RIF statutes. To the degree that the trial court's order can be interpreted to mean that "any" unclassified OTRD employee is subject to the LMLS, and thus subject to the RIF statutes, such is affirmed.
¶43 We hold the LMLS applies to OTRD property owned, but not leased, by the OTRD. Further, the LMLS applies only to such owned property possessing a state lodge or park facility, but not to parks in general.
¶44 We do not address the constitutionality of LMLS.
¶45 The trial court's order is affirmed in part and reversed in part.
¶46 AFFIRMED IN PART AND REVERSED IN PART.
BARNES, P.J., and RAPP, J., concur.

Appellee's Answer Brief, November 8, 2017, p. 1.

Though the style of OPEA I reflects the names of seven employees represented by OPEA, this is not to suggest the class of plaintiffs is limited. The actual number of employees, some of whom are not members of the OPEA, range from six (Snodgrass Affidavit R. 390-392); seven (OPEA I and Appellee's Answer Brief, p. 3), eight (Hughes affidavit R. 57), and "approximately ten" (R. 48 and Second Amended Petition, R. 79).

The State of Oklahoma did not intervene to address the constitutionality issue.

R. 498-499,

R. 2; Answer Brief, November 6, 2017, p. 1.

R. 390-391.

Beaver Dunes (City of Beaver (operator) and Pioneer Parks (owner) ); Brushy Lake State Park (City of Sallisaw); Lake Eucha State Park (City of Tulsa); Adair State Park (Adair County (operator), City of Stillwell (owner) ); Wah-Sha-She State Park (Osage Nation (operator), U.S. Army Corps of Engineers (owner) ). Moreover, the City of Heavener now operates Heavener Runestone State Park, and the Chickasaw Nation operates Boggy Depot.

We note one of the conditions of transferring a state park to a third party is "The consideration for the property transfer shall be the agreement of the recipient to continue public recreation use of the property and to manage the property without an operating subsidy from the Department or Commission, § 2224 (4)." Thus, to comply with this requirement, no OTRD employee may continue to work at the transferred park.

The distances between the old and new duty posts ranged from 20 miles to 120 miles.

The trial court's choice of words is arguably ambiguous. If by being "inapplicable" the trial court meant the RIF provisions would never be available to otherwise qualified Employees, such would be error. This does not appear, however, to be the position of either party, and we do not interpret it so.

The first portion of the LMLS reads:
Each employee at Murray State Park or Lake Murray Lodge who has a minimum of two (2) years' continuous service with the Oklahoma Tourism and Recreation Department at Murray State Park or Lake Murray Lodge on the date of closure of the facility shall have the opportunity to obtain employment with any successor operator of a resort or park facility located on the lands held by the Oklahoma Tourism and Recreation Department, provided the employee is qualified and eligible for any such employment.
There is no issue raised regarding this portion of the statute.